# IN THE COURT OF APPEALS OF IOWA

No. 18-1801
Filed December 19, 2018

**IN THE INTEREST OF A.M.,**
**Minor Child,**

**L.F., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother appeals the termination of her parental rights to her one-year-old daughter. **AFFIRMED.**

Meegan M. Keller, Altoona, for appellant mother.

Thomas J. Miller, Attorney General, and John McCormally, Assistant Attorney General, for appellee State.

Erin Mayfield of Youth Law Center, Des Moines, guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

A mother, Lacey, challenges the juvenile court's order terminating her parental relationship with one-year-old A.M. Lacey contends she has progressed with her mental-health treatment, housing stability, and domestic-violence counseling since the termination of her parental rights to two older children. In her words, she doesn't have "the drama-filled life" now at age twenty-six that she had at nineteen. Given that progress, she believes she can resume care of A.M. Lacey also argues termination is not in A.M.'s best interests.

After independently reviewing A.M.'s case, we find clear and convincing evidence to support the termination of Lacey's rights.[1] Lacey's history of not complying with medication management—which is critical to maintaining her mental health—presents an ongoing risk to A.M. if returned to Lacey's custody. Accordingly, the State satisfied the elements for termination under Iowa Code section 232.116(1)(h) (2018). As for A.M.'s best interests, we find termination of parental rights and the possibility of adoption by her foster parents ensures her safety and stability, as well as her prospect for healthy development, for the short-term and into the future. *See* Iowa Code § 232.116(2) (2017).

## I. Facts and Prior Proceedings

Lacey has been involved with the Iowa department of human services (DHS) for seven years. In 2011, the juvenile court removed her oldest child, Z.F.,

---

[1] We review child-welfare cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (citing *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Clear and convincing evidence must support the juvenile court's conclusions. *Id.* (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). Clear and convincing evidence means we harbor no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. *Id.* (citing *D.W.*, 791 N.W.2d at 706).

because of Lacey's struggle with substance abuse and mental-health issues.[2] The record from that case revealed Lacey, who stopped taking her prescribed medication, threatened to harm herself and Z.F., who was only three weeks old.[3] The court terminated Lacey's parental relationship with Z.F. in 2012.

A similar pattern emerged with Lacey's second child, B.C., who was born in 2014. The juvenile court adjudicated B.C. as a CINA in December 2016 because the mother had been using illegal drugs while caring for the child. Lacey acknowledged that she struggled to take her medications as prescribed during the pendency of B.C.'s CINA case. Lacey also endured domestic violence from B.C.'s father. Still, Lacey initially made strides toward reunifying with B.C. Lacey completed two substance-abuse programs. In June 2017, the juvenile court delayed permanency for an additional six months.

Only then did the DHS caseworker learn that Lacey was pregnant and expecting A.M. in August. The caseworker expressed concern A.M.'s father, Kevin, who was previously incarcerated for assault, was also violent toward Lacey. B.C. reported Kevin hit her mother "in the tummy." In January 2018, the juvenile court terminated parental rights to B.C. based on persistent concerns about Lacey's mental health, her dishonesty with the service providers, and the potential for domestic violence in her home.

---

[2] Medical specialists have diagnosed Lacey with depression and anxiety, as well as bipolar and intermittent explosive and mood disorders.

[3] Because the State alleged termination under Iowa Code section 232.116(1)(g) (which requires proof the court has terminated parental rights with respect to another child who is a member of the same family), the juvenile court took judicial notice of the earlier child-in-need-of-assistance (CINA) and termination files involving Lacey's two older children.

A.M. was born in August 2017. Within days of her birth, the juvenile court approved A.M.'s removal from Lacey's care. A.M.'s medical records showed that she

> tested positive for syphilis at birth due to [Lacey] not taking her prescribed medication during her pregnancy to prevent [the] disease from transferring to her baby. [The child] was transferred to the [neonatal intensive care unit] at Blank Children's Hospital to receive IV antibiotics to treat the syphilis. [She] spent approximately five days in the hospital.

A.M. later tested negative for syphilis. Since the removal, Lacey has had only fully-supervised visitation. By her own admission, Lacey did not start to take her prescribed medication consistently until mid-February 2018. Lacey also delayed seeking help from a domestic-violence advocate. And while Lacey was renting a house in Lucas during the CINA case, she did not have a written lease, was concerned the landlord might sell the house, and was exploring affordable housing options. At a permanency hearing in April 2018, the mother asked for six more months to reunify with A.M., but the DHS and the child's guardian ad litem recommended termination of parental rights.

The State petitioned to terminate parental rights in May 2018. After a July trial, the juvenile court issued its termination order.[4] Lacey now appeals.

## II.    Analysis

## A. Statutory Ground

To terminate parental rights, the juvenile court must first find clear and convincing evidence supporting one of the grounds for termination listed under

---

[4] The order also terminated the parental rights of A.M.'s father, Kevin. He is not a party to this appeal.

Iowa Code section 232.116(1). *See D.W.*, 791 N.W.2d at 706. In A.M.'s case, the court found the State met its burden under paragraphs (g) and (h). To affirm, we need only find grounds to terminate under one of the paragraphs cited by the juvenile court. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

We focus on paragraph (h). Lacey challenges only the sufficiency of the evidence supporting the fourth element—that A.M. could not be returned to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *D.W.*, 791 N.W.2d at 707 (interpreting the term "at the present time" to mean "at the time of the termination hearing").

Lacey contends she took "excellent advantage of all possible services" offered to her during this CINA case. For example, according to Lacey, "[s]he has obtained her own housing, completed substance abuse treatment twice, engaged in mental health evaluations and therapy, attended visits on a very regular and consistent basis, and is able to provide a safe home for the child."

But the juvenile court, which had the opportunity to see Lacey in person, described Lacey's angry and defiant demeanor during the court hearing. The juvenile court also detailed Lacey's "unresolved mental health issues and continued association with unsafe persons." We defer to the juvenile court's assessment of these matters. *See A.M.*, 843 N.W.2d at 110 (noting we give weight to the juvenile court's fact findings, especially those concerning witness credibility). We also note that Lacey's history of noncompliance with treatment recommendations has impacted her mental health and A.M.'s physical health since her birth—yet Lacey continued to struggle to take her medications as prescribed

until February 2018. Clear and convincing evidence shows A.M. would be at risk of harm if returned to Lacey's care at the time of the termination hearing.

**B. Best Interests**

Having found clear and convincing evidence supports terminating Lacey's parental rights under section 232.116(1)(h), we turn to her claim that termination is not in A.M.'s best interests.

In making the best-interests determination, we give primary consideration to A.M.'s safety, the best placement for furthering her long-term nurturing and growth, as well as her physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)). Safety and the need for a permanent home mark the "defining elements in a child's best interest." *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

Lacey contends termination is not in A.M.'s best interests because of the mother-daughter bond, her parenting skills, her completion of substance abuse treatment, and her "significant progress" in anger management. We applaud the efforts Lacey has made during this third CINA case. She deserves recognition for her recovery from substance abuse and commitment to visitation with A.M. But we cannot find A.M.'s best interests would be served by waiting any longer for permanency. For the past year, A.M. has been living with the same foster parents who adopted her half-sibling Z.F. The record shows she is well-adjusted and nurtured in that family. Like the juvenile court, we find termination of Lacey's parental rights and potential adoption are in A.M.'s best interests.

**AFFIRMED.**